CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
     DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ALBERT STEVEN TATE,** | )<br>) |
| Petitioner, | )<br>) Case No. 7:23cv00194<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| **CHADWICK S. DOTSON,**[1] | ) By:  Pamela Meade Sargent<br>) United States Magistrate Judge |
| Respondent. | )<br>) |

In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, Petitioner Albert Steven Tate, ("Tate" or "Petitioner"), a Virginia inmate proceeding through counsel, contends that his confinement pursuant to a 2018 state court judgment convicting him of sexual assault charges is unconstitutional.  Upon review of the record, including state court records forwarded electronically to this court and briefs and exhibits submitted by the parties, the court concludes that Respondent's Motion to Dismiss, (Docket Item No. 9), must be granted.

## I. BACKGROUND

Tate, a Tennessee resident using an assumed name, met the victim, D.C., a Virginia resident, through an online dating app called MeetMe.  The Court of Appeals of Virginia summarized the Commonwealth's evidence as follows:

> They met at [D.C.]'s house and had "consensual sex."  "[T]wo weeks later," [on July 13, 2016] [Tate] asked [D.C.] through text messages if he could "come over," but [D.C.] declined because she thought that he

---

[1] Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, "the petition must name as respondent the state officer who has custody" of the petitioner. That officer is Chadwick S. Dotson, the current Director of the Virginia Department of Corrections. Thus, Dotson is the proper respondent, and the Clerk shall update the docket accordingly.

was married.  [Tate] "begg[ed]" [D.C.], however, and she agreed that he could come to her house but told him that there would be "no sex." [Tate] arrived and tried to kiss [D.C.], but she "told him no . . . three or four different times and was pushing him away."  [Tate] then "backed" [D.C.] "into the corner of [her] sink" and put his fingers down her pants and into her vagina.  She told him "no" and that she "didn't want to have sex," but [Tate] "jerked his fingers," hurting [D.C.].  [Tate] then "bent [D.C.] over," "pulled [her] pants down," and "had [vaginal] sex" with her.  [D.C.] was "silently crying" and testified that she "had made it clear to him" that she did not want to "have sex."  After about fifteen minutes, [Tate] "put his penis inside [D.C's] anus," which caused [her] pain.  [Tate] then got down on "one knee" and tried to "fist" [D.C.] by placing his entire hand inside her vagina.  He stopped when [she] began "sobbing."

(Docket Item No. 11-3 at 2.)

      Tate maintains that their sexual encounter that day was consensual, but D.C. contends that it was not consensual.  Based on this incident, she sought and obtained criminal charges against Tate.  Authorities arrested Tate on sexual assault charges in early August 2016.  After a preliminary hearing, Tate was bound over to the grand jury of the Circuit Court for Scott County, which returned indictments on January 10, 2017, charging him with rape, forcible sodomy, and animate object sexual penetration, CR17000210, CR17000211, and CR17000212.

      According to court records provided to this court, the Circuit Court arraigned Tate on these charges on January 20, 2017, while Thomas Baker, Jr., ("Baker"), was appointed to represent him.  Thereafter, the court ordered that Tate undergo a mental competency evaluation.  He was terminated from treatment by Virginia Central State Hospital on April 17, 2017, after providers determined that he had been faking a mental disease or illness.  In June 2017, Baker withdrew, and the court appointed Rickey C. Moore, ("Moore"), as Tate's trial counsel.  Once Tate was cleared to stand trial, the circuit court conducted pretrial motions hearings on December 4, 2017, and January 17, 2018.  Among other things, the Circuit Court ruled that defense counsel

could not ask the victim about prior sexual engagements between her and the Petitioner or with other men.[2] The Circuit Court granted a motion for access to cell phone records of communications between Tate and D.C., but Tate alleges that counsel did not pursue this avenue of investigation. A jury trial was scheduled for January 30, 2018.

At a court proceeding on January 25, 2018, defense counsel informed the trial court that Tate intended to enter an *Alford* plea to the three charges against him.[3] (Docket Item No. 2-3 at 15.) On the record, the court questioned Tate, and Tate affirmed his intention to enter an *Alford* plea. The court questioned Tate about his understanding that "an *Alford* plea is treated the same as a plea of guilty," and Tate affirmed his understanding. (Docket Item No. 2-3 at 15.) The court also asked Tate if he understood the charges against him and if he had had an opportunity to discuss those charges and the elements the prosecution would be required to prove with counsel, and Tate affirmed that he did. (Docket Item No. 2-3 at 16.) The court also questioned Tate as to whether he had had enough time to discuss with counsel any possible defenses he might have to the charges and how a jury might decide his case, and Tate affirmed that he had done so. (Docket Item No. 2-3 at 16.) Specifically, the court asked Tate, "after discussing the case with Mr. Moore and getting his advice, you went all over that with him, did you decide for yourself that you were

---

[2] Virginia's so-called Rape Shield Statute prohibits admission of evidence or opinion evidence regarding the complaining witness's sexual reputation or her prior sexual conduct, unless she voluntarily discloses such conduct or it is relevant under the specific circumstances of the case. *See* VA. CODE. ANN. § 18.2-67.7 (2021). In Tate's case, the Circuit Court ruled that the relevant question was whether or not the victim consented to the sexual conduct that occurred on the date of the alleged offense, so it excluded all other evidence regarding her sexual history with Tate or anyone else.

[3] *North Carolina v. Alford*, 400 U.S. 25 (1970) (permitting a guilty plea by a criminal defendant who maintains his innocence, but who acknowledges that the prosecution has sufficient evidence to obtain a conviction).

going to enter a plea under the *Alford* rule?" and Tate stated, "Yes, sir." (Docket Item No. 2-3 at 17.)

The prosecution then offered a factual basis for the guilty plea, and defense counsel stipulated that the prosecution could produce "most of that evidence . . . if not all of it" and also stipulated to the court's jurisdiction. (Docket Item No. 2-3 at 20.) The court questioned Tate about the jury-trial-related rights that he would waive by entering an *Alford* plea, and Tate affirmed his understanding of these rights. (Docket Item No. 2-3 at 20-21.)

Then, the court informed Tate that if he entered an *Alford* plea, it would carry the same consequences as a plea of guilty; the court stated that Tate would be "basically stipulating that the evidence the Commonwealth has is sufficient in order to obtain a conviction, but you don't want to take a chance of being convicted by a jury and having a jury impose a sentence. Is that correct, sir?" and Tate answered, "Yes, sir." (Docket Item No. 2-3 at 21-22.)

Tate also denied that he had any impairment, any problem with vision or hearing or reading, that would cause him difficulty in understanding the documents at issue in the plea hearing — the plea questionnaire and the written plea agreement. (Docket Item No. 2-3 at 23.) The court asked, "Sir, has anyone threatened you or forced you to enter this plea?" and Tate answered, "No, sir." (Docket Item No. 2-3 at 23.) The court asked, "Other than what's contained in the Plea Agreement Proposal, . . . have you been promised anything if you enter this plea?" and Tate answered, "No, sir." (Docket Item No. 2-3 at 23.)

When the court asked, "Are you satisfied with the services Mr. Moore has provided to you as your attorney in this case?" Tate answered, "Yes, sir." (Docket Item No. 2-3 at 24.) The court specifically asked if Moore had "done what [Tate] asked him to do" and if the attorney had "failed to do something [Tate had] asked

him to do," and Tate affirmed that the attorney had done what Tate had asked him to do.  (Docket Item No. 2-3 at 24.)

The prosecutor then summarized the Plea Agreement.  (Docket Item No. 2-3 at 25-26.)  It provided for concurrent, 51-year sentences, each with 40 years suspended; a $10,000 fine; and 10 years of supervised probation after release, with unsupervised probation continuing for the length of the suspended sentences.  (Docket Item No. 2-3 at 25.)  Conditions of release included not having contact with the victim or her family and attending any treatment programs deemed appropriate by his probation officer.  (Docket Item No. 2-3 at 25-26.)

Before closing the plea hearing, the court questioned Tate again about his intent to enter an *Alford* plea, Tate again affirmed his intention to do so, and counsel also stated, "I think it's a proper plea," given the evidence.  (Docket Item No. 2-3 at 27-28.)  In the end, the court accepted Tate's pleas, found him guilty of the three charges against him and deferred sentencing so that the victim could participate and present her victim impact statement.  (Docket Item No. 2-3 at 28-29.)

On January 30, 2018, the Circuit Court conducted a sentencing hearing, pursuant to the Plea Agreement Tate had entered.  (Docket Item No. 2-4.)  Counsel stated that Tate wished to address the court, to make a motion, but the prosecutor questioned whether a counseled defendant could make a pro se motion.  (Docket Item No. 2-4 at 4.)  Counsel conferred with Tate and then stated that Tate was making a motion to withdraw his plea.  (Docket Item No. 2-4 at 4.)  When the judge asked, "[W]hat's supposed to be the reason for that?" counsel said, "[W]hat he was telling me, because of his innocence."  (Docket Item No. 2-4 at 4.)  The court stated, "Well, he's already pled guilty" and denied Tate's motion.  (Docket Item No. 2-4 at 5.)  The court then heard the victim's impact statement; Tate did not present any evidence and elected not to make any further statement to the court.  (Docket Item No. 2-4 at 5-10, 11, 14.)  The Circuit Court sentenced Tate pursuant to the Plea

Agreement, including concurrent sentences of 51 years' imprisonment with 40 years suspended on each of the three convictions. (Docket Item No. 2-4 at 15.)

After sentencing, Tate's counsel filed a written motion asking that Tate be allowed to withdraw his *Alford* plea, a motion for admission of evidence subject to Virginia's Rape Shield Statute, VA. CODE ANN. § 18.2-67.7, and a request for appointment of new counsel to pursue an appeal on Tate's behalf. After a hearing on February 12, 2018, the Circuit Court denied all motions.

Tate filed an appeal to the Court of Appeals of Virginia, Record No. 0841-19-3. But on July 17, 2018, that court dismissed the appeal because Tate failed to file a timely Petition for Appeal.

On December 6, 2018, the Supreme Court of Virginia received and docketed Tate's first state habeas corpus petition, Record No. 181625. (Docket Item No. 11-2.) In his state petition, Tate raised claims that the prosecutor had committed fraud and that trial counsel had provided ineffective assistance in various ways, including through failure to file a Petition for Appeal. The Supreme Court of Virginia granted this petition in part upon finding that Tate had been denied his right to appeal. The Supreme Court dismissed all other habeas claims without prejudice, subject to the bar on successive habeas claims in Virginia Code Annotated § 8.01-654(B)(2). (Docket Item No. 11-2 at 1-2.)

Tate then pursued his belated appeal, Record No. 0841-19-3, arguing that the trial court, in denying his motion before sentencing to withdraw his *Alford* plea merely because Tate already had pled guilty, applied an incorrect legal standard. The Court of Appeals of Virginia affirmed the judgment of the trial court by Order dated October 31, 2019. (Docket Item No. 11-3.) Specifically, the Court of Appeals found that to prevail on a motion seeking to withdraw a guilty plea before sentencing, the defendant must show a good-faith basis for making the plea and for later seeking

to withdraw it and present evidence of "a reasonable basis for contesting guilt."[4] (Docket Item No. 11-3 at 3.)  The reviewing court found that the trial judge applied this test to Tate's presentencing motion by giving Tate an opportunity to state the factual basis for his motion.  (Docket Item No. 11-3 at 4.)  Tate did not state any facts showing a "good-faith basis for entering guilty pleas and seeking to withdraw" them or present "any evidence of a reasonable defense."  (Docket Item No. 11-3 at 4.)  The Court of Appeals noted that Tate failed to state evidence that his pleas were not voluntary, that they were "entered inadvisedly due to fraud, coercion, or undue influence," or that he failed to "understand the nature and consequences of his pleas."  (Docket Item No. 11-3 at 4.)  He merely declared that he wished to withdraw his plea "because of his innocence."  (Docket Item No. 11-3 at 4.)  In making an *Alford* plea, Tate already had maintained his innocence, so his continuing declaration of innocence before sentencing "did not establish 'a good-faith basis' for withdrawing his pleas."  (Docket Item No. 11-3 at 4.)  The Supreme Court of Virginia denied Tate's subsequent appeal on October 21, 2020, and denied his Petition for a Rehearing on February 5, 2021, Record No. 200171.  (Docket Item No. 11-4.)

In November 2020, Tate filed his second state habeas corpus petition in the Supreme Court of Virginia, Record No. 201411.  In brief, he raised the following claims:

    1.    Trial counsel was ineffective when he failed to proffer any evidence to support Tate's timely filed motion to withdraw the *Alford* plea before sentencing.

    2.    Trial counsel provided incorrect legal advice to Tate and prejudicially failed to inform Tate about the consequences of pleading guilty, which undermined the knowing, voluntary, and intelligent nature of his plea.

---

[4] The court has omitted internal quotation marks, alterations and/or citations here and throughout this Opinion, unless otherwise noted.

(Docket Item No. 11-5.)  The Supreme Court, upon reviewing these claims, issued an Order dated September 16, 2021, directing the Circuit Court for Scott County to appoint counsel for Tate and conduct an evidentiary hearing on the following issues:

1. Whether [Tate] questioned or expressed concern to counsel regarding how his convictions might impact his ability to interact with his children during and following his incarceration;

2. If so, when and under what circumstances did [Tate] do so;

3. What research or investigation, if any, did counsel perform in response to [Tate]'s questions or concerns; and

4. What information, if any, did counsel provide to [Tate] in response to [his] questions or concerns.

The Circuit Court appointed Attorney Flux J. Neo to represent Tate and conducted an evidentiary hearing on the specified questions on November 19, 2021, (Docket Item No. 11-6).  The court heard testimony from Tate and his former trial counsel, Rickey Moore, as well as argument from counsel for the parties.  On January 5, 2022, the Circuit Court issued its Evidentiary Hearing Report.  Weighing the credibility of the two witnesses and the evidence presented, the Circuit Court found that Tate had never expressed concerns to his defense counsel about how the *Alford* plea would affect his ability to interact with his children or how registering as a sex offender in Tennessee might be different than in Virginia.  Tate testified that Moore advised him that accepting the Plea Agreement was the only way he could see his children.  Moore denied making any such statement, and the Circuit Court found that during the hearing, the credibility of the witnesses made it clear that Moore made no promises to Tate about his ability to interact with his children as a registered sex offender.  Based on these factual findings, the Circuit Court concluded that the remaining questions assigned by the Supreme Court of Virginia were moot.  By Order dated May 6, 2022, the Supreme Court of Virginia considered the parties'

habeas pleadings, the Circuit Court's Evidentiary Hearing Report and Tate's objections to it, and it granted the Motion to Dismiss. (Docket Item No. 11-5.) Specifically, the Supreme Court of Virginia found Tate's claims to be procedurally defaulted, in part,[5] and without merit, in part. (Docket Item No. 11-5.)

This court received and docketed Tate's § 2254 petition on April 3, 2023, (Docket Item No. 1).[6] In his related submissions, Tate asserts the following claims:[7]

> A. Trial counsel provided ineffective assistance by failing to investigate and present defenses in support of Tate's Motion to Withdraw his *Alford* Plea on January 30, 2018, before sentencing and again, on February 12, 2018.
>
> B. Trial counsel provided ineffective assistance by failing to properly advise Tate of the requirements of sex offender registration in Virginia and Tennessee and their consequence, and this omission deprived Tate of making a knowing, intelligent and voluntary *Alford* plea.

(Docket Item No. 2 at 9, 11.) Respondent has filed a Motion to Dismiss, (Docket Item No. 9), arguing that Tate's federal habeas claims must be denied on the merits

---

[5] In addressing Tate's second state habeas petition, the Supreme Court of Virginia found that portions of his claims were procedurally defaulted under Virginia Code Annotated § 8.01-654(B)(2), because he had not presented them in his prior state habeas petition. (Docket Item No. 11-5.) Respondent has not invoked procedural default as a defense in the federal habeas case, however.

[6] The parties agree that Tate filed his § 2254 petition within the time limits set by 28 U.S.C. § 2244(d)(1)(A), and Respondent does not argue that any portion of Tate's § 2254 claims is procedurally barred from federal habeas review.

[7] Tate's § 2254 claims are designated as Grounds 1 and 2 in his § 2254 form petition, but in the attached Memorandum in Support, his habeas counsel designates Claims A and B, in reverse order to the claims as stated in the form petition. (Docket Item Nos. 1, 2.) Because Respondent has followed the format of the Memorandum, the court also will use that format.

under 28 U.S.C. § 2254(d). Tate, through counsel, has filed a response, making the motion ripe for disposition.

## II. Discussion

### A. The Standard of Review under 28 U.S.C. § 2254(d)

Under the Anti-terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct. A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

> The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system. . . . In other words, a federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification . . . beyond any possibility for fairminded disagreement.

*Mays v. Hines,* 592 U.S. 385, 391 (2021).

When reviewing claims that counsel provided ineffective assistance at trial or on appeal, a federal court must apply a highly deferential standard. A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient

-10-

performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of a § 2254 habeas claim already addressed by state courts, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To establish the element of deficient performance, a petitioner must demonstrate that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Strickland*, 466 U.S. at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Strickland,* 466 U.S. at 689-90. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

To establish prejudice, a petitioner must show that, but for counsel's challenged conduct, there is a "reasonable probability that . . . the result of the proceeding would have been different," which requires showing "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Where a defendant claims that counsel failed to advise him adequately, leading to a guilty plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994); *Strickland*, 466 U.S. at 697. The court will apply these deferential standards in reviewing Tate's

ineffective assistance of counsel claims, both of which were rejected by the state habeas court.

### B. Motion to Withdraw *Alford* Plea

As stated, Claim A of Tate's § 2254 Petition contends that counsel failed to provide factual support for Tate's motions seeking to withdraw his *Alford* pleas. Tate argues that he had a statutory right to move to withdraw his plea within 21 days of the entry of Judgment, per Va. Code Ann. § 19.2-296. While Tate recognizes that he has no statutory or constitutional right to have such a motion granted, he asserts that trial counsel, as part of his obligation to provide zealous representation, should have presented reasons to support Tate's motion. Counsel failed to do so. Tate also claims that he can show the resulting prejudice necessary for an ineffective assistance claim under *Strickland*.

The Supreme Court of Virginia found that this claim (Ground 1 of the second state habeas petition):

> satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The record, including the transcript of [Tate]'s sentencing hearing and the Court of Appeals per curiam order denying his appeal, demonstrates counsel did not miss a potentially meritorious objection to the legal standard the trial court applied when denying [Tate]'s motion to withdraw his pleas. At the beginning of [Tate]'s sentencing hearing, counsel indicated [Tate] wished to personally make a motion. When the Commonwealth resisted [Tate] making a motion not through counsel, counsel conferred with [Tate] and informed the court that [Tate] wished to withdraw his pleas. Noting that [Tate] had entered his pleas only days earlier, the court questioned the basis for the motion. Counsel responded [Tate] had told him "his innocence." Commenting that [Tate] had already "pled guilty," the court denied the motion. On appeal, the Court of Appeals rejected [Tate]'s contention that the trial court merely considered the fact of his pleas when denying his motion to withdraw them. The Court of Appeals explained that the trial court gave [Tate] an opportunity to explain a sufficient basis for withdrawing

> his pleas and then denied the motion after [Tate] failed to do so. Considering also that a trial court is presumed to know the law, there is no indication counsel unreasonably missed a chance to correct the trial court's perception of the standard that governs motions to withdraw pleas or that any such correction might have altered the trial court's ruling. *See Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) ("We will not fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied.").
>
> Further, [Tate] has not established that counsel unreasonably neglected to proffer or articulate a potentially meritorious basis to support [Tate]'s motion to withdraw. To withdraw a plea pre-sentencing, a defendant must "show that [1] his motion was made in good faith and [2] premised upon a reasonable basis." *Brown v. Commonwealth*, 297 Va. 295, 299 (2019) (internal quotation marks omitted). "A reasonable basis must include a proffer of evidence showing a reasonable basis for contesting guilt," so as to prevent granting a motion to withdraw that would lead to a futile trial. *Id.* (internal quotation marks omitted).
>
> Here, considering the allegations properly before the Court, [Tate] has suggested only that counsel failed to inform the trial court that [Tate] should be allowed to withdraw his pleas because he did not appreciate their full consequences. However, so informing the court would not have satisfied the requirement that [Tate] "proffer . . . evidence showing a reasonable basis for contesting guilt." *See Justus v. Commonwealth*, 274 Va. 143, 154 (2007) ("[T]he motion should be granted even if the guilty plea was merely entered 'inadvisedly' when the evidence supporting the motion shows that there is a reasonable defense to be presented to the judge or jury trying the case."). Counsel could have reasonably chosen not to make a motion that lacked the requisite support and, in any event, the trial court would not have granted such a motion. Thus, [Tate] has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

(Docket Item No. 11-5 at 5-7.)

As Tate must under § 2254(d) to warrant federal habeas relief, he has not demonstrated that the state habeas court's rulings were contrary to or an unreasonable application of *Strickland* or any other federal law, or that they were based on an unreasonable determination of facts. While Tate alleges that counsel was ineffective for failing to present argument in support of the motion seeking withdrawal of the *Alford* plea, Tate's Petition fails to state any factual basis that counsel could have presented in support of that motion. The trial court had ruled out admission at trial of certain kinds of evidence, pursuant to Virginia's Rape Shield law. Moreover, Tate does not challenge the habeas court's ruling that the trial court gave Tate, personally, an opportunity to offer any other factual support for his motion, which he failed to do.

Similarly, Tate does not challenge the state habeas court's legal finding that counsel's failure to correct the trial court's application of the standard for withdrawing guilty pleas was not unreasonable. Nor does Tate show that any such correction of the trial court's alleged misperception of the standard would have resulted in a ruling favorable to Tate.[8] Finally, Tate has not challenged the state court's ruling that counsel could reasonably have believed that the trial court would not grant a motion asking for withdrawal of a guilty plea, based merely on Tate's contention that he did not fully appreciate the collateral consequences of that plea,

---

[8] In any event, the Court of Appeals of Virginia had ruled that the trial court applied the correct legal standard in denying Tate's pre-sentencing motion to withdraw his *Alford* plea. (Docket Item No. 11-3 at 3-4.) As for the post-sentencing motion, counsel referred to it as merely an effort to note an objection on the record that the trial court had denied the pre-sentencing motion. (Docket Item No. 2-5 at 3-4.) The reasoning offered for both motions was merely Tate's "maintain[ing] the reasons he pled *Alford*," to assert his innocence despite the evidence being sufficient to convict him. (Docket Item No. 2-5 at 4.) Moreover, Tate's discussion of the two motions to withdraw his plea does not assert different legal standards or state facts counsel could have offered to support either motion.

as he asserts in his second claim. *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (finding that counsel is not required to file frivolous motions).

For the stated reasons, Tate has not shown that the state habeas court was incorrect or unreasonable in its conclusions under *Strickland* that counsel acted with professional judgment and that Tate failed to demonstrate that counsel's actions prejudiced him. Under the deferential § 2254(d) standard of review that this court must apply, Tate, thus, has not shown that the state court's habeas rulings were either an unreasonable application of federal law or based on an unreasonable determination of facts. Therefore, the court will grant the Motion to Dismiss as to Claim A of the federal Petition.

### C. Inadequate Advice about the Sex Offender Registry

Claim B in the federal Petition alleges that counsel failed to investigate and properly advise Tate about laws of Virginia and Tennessee concerning restrictions on registered sex offenders so that Tate could make a knowing and voluntary *Alford* plea to the sex offense charges. Tate contends that counsel knew he and his children were Tennessee residents. The Petition recites various restrictions applicable to offenders who must register under Virginia and Tennessee law. An offender who fails to comply with these legal restrictions may be charged with a violation of his conditions of probation and face reinstatement of suspended sentences or other legal penalties. The Petition, however, does not state how knowing more about Tennessee sex offender registration restrictions would have convinced Tate to reject the Plea Agreement and risk a longer sentence after a trial. Rather, Tate's Petition apparently assumes that the court will comb through his state habeas petition[9] and the Habeas

---

[9] For example, in summarizing Tate's second state habeas petition, the Supreme Court of Virginia recounts his claims that Virginia Department of Corrections policy requires an inmate with violent sex offenses like Tate's to apply for an exception before he can visit with his children; and that other restrictions on sex offenders would allow him

Hearing Transcript to find evidence to support this claim. The court declines to do so.

Instead, pursuant to 28 U.S.C. § 2254(e)(1), this court must defer to the factual findings that the Circuit Court made, and the Supreme Court of Virginia adopted, from the evidence presented at the Habeas Hearing on November 19, 2021. (Docket Item No. 11-5.) Specifically, the courts concluded that, although Tate claimed otherwise, counsel's more credible testimony was that Tate never questioned counsel about how his sex offense convictions would impact his ability to interact with his children while he was incarcerated or after his release as a registered sex offender. (Docket Item No. 11-5 at 10.) Ultimately, applying the factual findings of the Circuit Court in its report, the Supreme Court found that Tate's Claim B

> fails to satisfy [the] "performance" prong of the two-part test enunciated in *Strickland*. The record, including the transcript of [Tate]'s plea hearing, the transcript of the evidentiary hearing, and the circuit court's findings of fact, demonstrates that, prior to [Tate] entering his pleas, counsel warned him that his convictions would require that he report where he was living and employed. Although counsel knew [Tate], his children, and his ex-wife were Tennessee residents, counsel informed [Tate] of the registration requirements as if [Tate] were going to live in Virginia. Counsel also informed [Tate] "he could not be around children" but did not tell [Tate] that his only chance of seeing his children again was to accept the plea agreement.
>
> Further, in negotiating the plea agreement, [Tate]'s only concern was minimizing the duration of his incarceration, and [Tate] never

---

only supervised visitation with his children and prohibit him from attending their sporting events or school functions. (Docket Item No. 11-5 at 9.) In the state habeas petition, Tate also asserted that he has joint custody of his children and would not have pleaded guilty if he had known that his convictions would "significantly restrict his ability to participate in their upbringing and his experiencing the joys of fatherhood." (Docket Item No. 11-5 at 9.) Tate's federal petition does not directly reference these contentions or state anything similar regarding his children or his allegation that knowledge of sex offender restrictions on his interactions with them would have caused him to forego the favorable terms of his *Alford* Plea Agreement and accept the risk of much longer prison terms after a trial.

questioned or expressed concern to counsel regarding the requirement that he register as a sex offender or how his convictions might impact his ability to interact with his children during or after his incarceration. In turn, counsel never made any promises or assurances to [Tate] regarding whether his children would be able to visit him in prison nor did counsel tell [Tate] his convictions would not impact his ability to parent his children.

Accordingly, [Tate] fails to demonstrate that counsel affirmatively misadvised him regarding the extent to which his convictions would impact his ability to interact with his children during or after his incarceration. Similarly, because [Tate] did not express concern about those issues, [Tate] fails to demonstrate counsel unreasonably neglected to further inform him of the collateral ramifications of his pleas. *See Sims v. United States*, 785 F. App'x 632, 634-35 (11th Cir. 2019) ("An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation . . . . , [h]owever, affirmative misadvice about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel because certain considerations are so important that misinformation from counsel may render the guilty plea constitutionally uninformed.") (internal quotation marks omitted); *see also Chaidez v. United States*, 568 U.S. 342, 349 n.5 (2013) ("[O]ther effects of a conviction commonly viewed as collateral include civil commitment, civil forfeiture, sex offender registration, disqualification from public benefits, and disfranchisement."); *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1994) (*overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996)) (although an attorney is ordinarily under no obligation to inform his client about the "myriad of 'collateral consequences' of pleading guilty," he must not "grossly misinform" a client "where the client asks for advice about a 'collateral consequence' and relies upon it in deciding whether to plead guilty"). Thus, [Tate] has failed to demonstrate that counsel's performance was deficient.

(Docket Item No. 11-5 at 9-11) (footnote omitted).

This court cannot find that the state court's ruling was contrary to or an unreasonable application of *Strickland* or any other established federal law. By law,

a federal habeas court must presume the correctness of state court factual findings, unless the habeas petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Tate has not attempted to demonstrate that the state courts clearly erred in crediting the truthfulness of counsel's testimony during the habeas hearing over his own, given the facts as a whole. Thus, the credibility and evidentiary findings of the state courts are binding on this court in its federal habeas review. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

In assessing the credibility of witnesses during the habeas hearing, the Circuit Court found -- and the Supreme Court of Virginia agreed -- that Tate did not question or tell counsel of concerns about the sex offender registry requirements or restrictions or how they might affect his ability to interact with his children, during and after his incarceration. (Docket Item No. 11-5 at 10.) The Circuit Court also found -- and the Supreme Court agreed -- that counsel did not promise or assure Tate that restrictions related to the convictions would *not* impact his chances for his children to visit him in prison or his ability to parent his children. (Docket Item No. 11-5 at 10.) These credibility findings have ample support in the testimony offered at the hearing and Tate's responses during the plea colloquy and on the plea questionnaire. (Docket Item No. 11-6 at 10-11, 20-24, 29-35, 42-44, 48-62.) Specifically, in contradiction of Tate's own testimony, Tate admitted his statements during plea proceeding that no one had made any promises outside the terms of the Plea Agreement and that he was satisfied with his attorney's representation, who had not failed to do anything Tate had asked him to do. (Docket Item No. 11-6 at 60-62.)

In light of the factual findings from the habeas hearing, the state courts also found that, because Tate did not express concern about these issues, counsel did not perform unreasonably in failing to further inform him of such collateral implications of his guilty pleas. (Docket Item No. 11-5 at 10.) Tate has not shown by clear and convincing evidence that the state courts' factual findings were unreasonable for purposes of § 2254(d).

Tate also has not demonstrated that the state habeas court unreasonably applied established federal law in finding that counsel's performance was not deficient. Counsel's failure to inform the defendant about collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation. *See Chaidez v. United States*, 568 U.S. 342, 356 (2013). Sex offender registry implications are a collateral, not a direct, consequence of a guilty plea. *See Chaidez*, 568 U.S. at 349 n.5. On the other hand, while counsel normally has no obligation to inform the defendant about the "myriad collateral consequences of pleading guilty," counsel provides deficient representation if he "grossly misinform[s]" a defendant who has asked for advice on a particular "collateral consequence and relies upon it in deciding whether to plead guilty." *Ostrander*, 46 F.3d at 355. Tate has not demonstrated that the state court unreasonably applied these federal legal standards in deciding against him on Claim B.

Once the state habeas court had ruled that Tate's Claim B failed under the performance facet of the *Strickland* standard, it could, and rightfully did, deny relief on his claim without making separate findings and legal conclusions on whether he had shown prejudice. *See Strickland*, 466 U.S. at 697 (finding that where petitioner fails to establish either deficient performance or prejudice, court may dismiss ineffective assistance claim without discussing the other element).[10]

---

[10] The Memorandum in Support of Tate's Petition offers a lengthy discussion in support of his assertion that he has shown prejudice under *Strickland* and *Hill*—that he

### III. CONCLUSION

For the stated reasons, the court concludes that the Motion to Dismiss must be granted under 28 U.S.C. § 2254(d)(1).

A separate Final Order will be entered herewith, and the Clerk will transmit a copy of the Opinion and Order to counsel for the parties.

**ENTERED**:  March 25, 2024.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

---

would not have accepted the Plea Agreement if counsel had fully advised him of unspecified restrictions he would face with regard to his ability to interact with his children during his incarceration and after his release.  (Docket Item No. 2 at 15-21.)  In support of his prejudice arguments, Tate cites *Lee v. United States*, 582 U.S. 357 (2017) and *United States v. Swaby*, 855 F.3d 233 (4th Cir. 2017).  In both cases, the Government conceded or the court summarily concluded that trial counsel had performed deficiently by failing to advise (or misadvising) the defendant of the immigration implications of accepting a Plea Agreement.  *See Lee*, 582 U.S. at 364; *Swaby*, 855 F.3d at 240; *see also Padilla v. Kentucky*, 559 U.S. 356, 368 (2010) (holding that counsel's failure to advise defendant about "succinct, clear, and explicit" immigration consequences for a conviction is constitutionally deficient performance under the Sixth Amendment).  Thus, the only legal issue decided in *Lee* and *Swaby* was the prejudice prong of the standard, which the court need not discuss regarding Tate's Claim B.  Moreover, these cases are clearly distinguishable from the facts of Tate's case, because it does not involve any immigration or deportation consequences arising from his *Alford* pleas.